UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                              |   |                |
|------------------------------|---|----------------|
| NELSON CARRASQUILLO,         | ) |                |
|             Petitioner,      | ) |                |
|                              | ) | CRIMINAL ACTION |
|                              | ) | NO. 06-10284-WGY |
|     v.                       | ) |                |
|                              | ) |                |
| UNITED STATES,               | ) |                |
|             Respondent.      | ) |                |

REPORT

YOUNG, D.J.                                    October 13, 2011

By order of September 26, 2011, the United States Court of Appeals for the First Circuit ordered a limited remand of the appeal of Nelson Carrasquillo ("Carrasquillo")

> to allow the district court to clarify the reasoning behind its sua sponte dismissal, as we are not able to discern the reasons for the dismissal. In particular, we are unable to determine what the court meant when it concluded that Carrasquillo had failed to show prejudice.

Order of Court, Carrasquillo v. United States, No. 10-1489 (1st Cir. Sept. 26, 2011).

In his memorandum in support of his habeas petition, Carrasquillo complains that his counsel was constitutionally ineffective when, during an unprotected proffer after his plea, his counsel failed to protect him from egregious and improper browbeating by the government which badgered him into an untrue admission of gun possession in the course of committing the

crimes to which he had just pleaded guilty. Pet'r's Mem. Supp. Mot. Pursuant 28 U.S.C. § 2255 ("Pet'r's Mem.") 10-11, ECF No. 235. Carrasquillo also complains that the pre-sentence report misrepresents the extent of his drinking during the relevant time period. Id. at 12. This Court summarily dismissed his petition with the margin notation: "Even accepting as true the facts alleged, petitioner has not demonstrated any prejudice . . . ." Order, Mar. 31, 2010.

The direct answer to the query from the Court of Appeals is that Carrasquillo suffered no constitutional prejudice from the conduct of defense counsel because neither his gun possession vel non nor his drinking (there is no suggestion here of diminished responsibility) played any role whatsoever in the sentence this Court imposed.[1] While this Court gave due regard to each of the 18 U.S.C. § 3553(a) factors and fashioned just and individualized sentences for Carrasquillo and each of his co-defendants, the main driver of Carrasquillo's sentence was the need for due proportionality among Carlos A. Pizarro (least culpable - already sentenced to thirteen years), see Judgment in a Criminal Case at

---

[1] This Court's report that Carrasquillo's gun possession played no role in determining his ultimate sentence ought not be taken as an assertion that the question of his gun possession was not considered. As the record makes clear, the matter was carefully considered in determining whether to enhance the potential sentence and, conversely, whether to grant a safety valve adjustment. See Sentencing Tr. 21-24, Mar. 17, 2008, ECF No. 171.

2

2, United States v. Pizarro, No. 06-10284-2 (D. Mass. Dec. 13, 2007), ECF No. 156; Carrasquillo (more culpable - sentenced to eighteen years), see J. Criminal Case 2, ECF No. 166; and Roberto E. Pulido (most culpable - later sentenced to twenty-six years), see Amended Judgment in a Criminal Case at 2, United States v. Pulido, No. 06-10284-1 (D. Mass. July 24, 2008), ECF No. 197. The need for proportionality among co-defendants has been expressly recognized as an appropriate consideration by the First Circuit, see United States v. Martin, 520 F.3d 87, 94 (1st Cir. 2008), and that was what was going on here. Indeed, this was the focus of the argument of both counsel during the sentencing hearing, see Sentencing Tr. 32-37, 41-43, Mar. 17, 2008, ECF No. 171, and this Court expressly concluded that "[Carrasquillo's] involvement is much greater than that of Mr. Pizarro." Id. at 44. There simply was no prejudice. That's it.

Even so, as the Court of Appeals has here thought it necessary to inquire as to this Court's approach, an appropriate respect for the question posed requires a more nuanced response.

### I. Possible Sentence Enhancement

In United States v. Kandirakis, 441 F. Supp. 2d 282, 318-20 (D. Mass. 2006), this Court sought to reconcile the conflicting opinions in United States v. Booker, 543 U.S. 220 (2005), by adopting a protocol whereby all factual sentencing enhancements (other than criminal history matters wherein a defendant has

3

already had his opportunity for jury fact finding) must be tried to a jury on actual evidence requiring proof beyond a reasonable doubt. This procedure has garnered the express approval of Justices Scalia and Thomas, <u>Rita</u> v. <u>United States</u>, 551 U.S. 338, 378 n.5 (2007) (Scalia and Thomas, JJ., concurring in part and concurring in the judgment), and, while not required in the First Circuit, <u>United States</u> v. <u>Zapata</u>, 589 F.3d 475, 482-84 (1st Cir. 2009), my use of it to sentence on a firmly-established factual footing has thus far never been questioned at the appellate level. This Court applies the protocol to a plea by requiring that, during the plea colloquy, the defendant knowingly, intelligently, and voluntarily admit to the facts that undergird the enhancement.[2]

---

[2] The wisdom of this protocol is confirmed on a daily basis in this session of the Court. Consider these two recent cases:
    In <u>United States</u> v. <u>Gonsalves</u>, No. 10-10398 (D. Mass. 2011), Gonsalves had pleaded guilty, freely admitting the quantity of drugs in the controlled buy as well as drugs in other uncharged buys. Plea Colloquy, <u>Gonsalves</u>, No. 10-10398 (May 10, 2011). He adamantly denied, however, that he had anything to do with other drugs found in the car where he was arrested. <u>Id.</u> Accordingly, the Court accepted his plea and, Gonsalves having waived his right to a jury on this issue, scheduled an evidentiary hearing to precede his sentencing on the issue of whether reasonably to attribute the other drugs in the car to him. <u>See</u> Docket Entry, <u>Gonsalves</u>, No. 10-10398 (May 10, 2011). Faced with the prospect of actually having to prove the provenance of these drugs, the government undertook a further investigation which revealed that, in fact, Gonsalves had nothing to do with the drugs in the car. <u>See, e.g.</u>, Sentencing Excerpt Transcript at 3, <u>Gonsalves</u>, No. 10-10398, ECF. No. 23-1 (Sept. 30, 2011). The pre-sentence report had assigned a level 26 for the drugs attributable to Gonsalves. Given the government's further investigation, this level fell to 18 and Gonsalves was sentenced accordingly. <u>See</u> Pre-Sentence
4

Here, no mention was made of gun possession during Carrasquillo's plea colloquy, see Plea Colloquy, Nov. 05, 2007, ECF No. 170, and he made no admission as to any such possession. The pre-sentence report, however, recommended a two-level increase based on such an admission during the post-plea unprotected proffer. Pre-Sentence Report 12, Feb. 28, 2008. Government counsel argued that such a recent admission ought be considered in determining Carrasquillo's sentence. Sentencing Tr. 12.

This Court sorted these matters out during the sentencing hearing. Id. at 14-16, 21-24. As a starting point, one can do no better than refer to Judge Hornby's succinct and sensible explanation of the workings of a federal sentencing hearing

---

Report at 9, Gonsalves, No. 10-10398 (July 12, 2011).

In United States v. Rago, No. 08-10268, Rago was convicted of criminal violations of the Taft-Hartley laws in that, inter alia, he demanded or received unlawful labor payments. See Judgment in a Criminal Case at 1, Rago, No. 08-10268, ECF No. 167. The amount of such payments was committed to the jury, which found Rago guilty of demanding or receiving $21,485.00 of such payments. See Pre-Sentence Report at 5, Rago, No. 08-10268 (Sept. 26, 2011). Nevertheless, the government persuaded the probation officer to put the figure $230,900 in the pre-sentence report. Id. at 8. This resulted in a 12-level enhancement. Id. At sentencing, the Court concluded that the jury figure was correct. This resulted in a 4-level enhancement and Rago was sentenced accordingly. See, e.g., Sentencing Excerpt Transcript, Rago, No. 08-10268, ECF No. 167-1 (Oct. 3, 2011). The forfeiture mandatory under the law dropped from $230,900 to $10,000. Id. at 5.
   Absent a consistent commitment to actual fact-finding, this Court simply does not have adequate confidence that its crucial sentencing decisions are truly based in existential reality.

5

today.  D. Brock Hornby, Speaking in Sentences, 14 Green Bag 2d 147 (2011).  I seek to emulate Judge Hornby's wise advice with but few changes, primarily in the order of analysis.

As I explained at the outset of Carrasquillo's sentencing hearing:

> THE COURT: Now, this [] sentencing proceeds under 18 United States Code, Section 3553(a).  The first thing -- the first thing in this Court, I consider, I proceed in the following fashion.  I determine the highest constitutionally reasonable sentence.  I determine the highest constitutionally reasonable sentence by taking all the factors in the sentencing guidelines which have been admitted to, or in terms of the criminal history which I can take judicial notice of, without any downward adjustment of any sort, and then I go to the highest of the resultant range.  In this Court's view that is the highest constitutionally reasonable sentence because I would be attributing to Mr. Carrasquillo things that I would not, that I don't think can be quantified.
> Now, once I've done that then I will turn to the, from the available sentencing databases the average sentences imposed for crimes of this type on other offenders nationwide, First Circuit, and in this district.  When that's done, I'll go back and calculate, as I am required to, the advisory sentencing guidelines, and there I will take into account some, and I understand it's disputed, downward adjustments.  And again, if you dispute the ones that I make or think I should make others, I will hear you.
> When that's all decided, then I'll hear the government with respect to its sentencing recommendation, the defense, I'll hear from Mr. Carrasquillo, and impose sentence.

Sentencing Tr. at 8-9.  This is the Court's usual procedure.  See United States v. Jones, 762 F. Supp. 2d 270, 279-81 (D. Mass. 2010).

The dispute over the gun possession enhancement arose at once and the Court inquired:

6

> THE COURT: But as a factual matter there's no dispute, is it, he admitted to the gun, in an unprotected safety valve proffer. Is that fact disputed?
> [DEFENSE COUNSEL]: Not for the purpose of this hearing, no.

Sentencing Tr. at 15.

The Court also reflected:

> [THE COURT]: Courts have never yet taken the position, once Booker came down, with remedial Booker, that enhancements had to be charged. I think it's a good policy. I think that would be a good direction for the law to take. But I operate within a legal system to which I am sworn to adhere. And I take it very seriously. There is no requirement that it be charged and go through the indictment process. At least there's no requirement yet. So, I'm choosing my words with care. I'm trying to find the highest constitutionally reasonable sentence that a judge could impose.
> Now, I have little trouble with his admission because the admission was made during an unprotected proffer. Since the admission's there, I do count it now. Whether I count it for the advisory sentencing calculation is another thing altogether.

Id. at 14.

Having established the highest constitutionally reasonable sentence that might be imposed on Carrasquillo (293 months), id. at 10, the Court revisited the gun possession issue during the course of calculating the advisory sentencing guidelines and entertained further argument. Defense counsel was hardly supine at this (or any) stage. The relevant interchange was:

> THE COURT: For purposes of the guideline calculation, I think I will not add in the two levels for the gun. At the same time, I see no basis for applying the safety valve in circumstances where by its own terms it does not apply. So it's a wash. If someone wants to argue about that I will hear you.

Id. at 21.

> THE COURT: If I counted the gun and went up two levels and then gave him the safety valve and went down two levels, the result is the same.

Id. at 22.

> THE COURT: Why should there be a gun -- why should I not count the gun as an enhancement if it was made during an unprotected proffer, but count the gun -- strike that. It seems to me either I count it both ways or I don't count it both ways.
> What's wrong with that?
> [DEFENSE COUNSEL]: Well, under the circumstances of this proffer -- first of all, it took a little time to extract that information from Mr. Carrasquillo. I'm not saying that there was anything that was improper or illicit done during the course of the proffer, but initially I think Mr. Carrasquillo's response was that he didn't believe that he carried a gun. . . .
> But nevertheless, after the question had gone around several times, Mr. Carrasquillo did concede to possessing a gun. But in the context of his proffer it was more of a reflexive thing in the sense of him being a police officer, it's something that he took with him on most occasions to most events and just happened to have it in his possession on this occasion without having it for the purpose I think that, that underlies a court not accepting the safety valve proffer.
> THE COURT: All right, I understand. But I'm . . . going to treat it as a wash. I'm not going to add it and I'm not going to give the safety valve.
> That gives us an adjusted offense level of 36, a criminal history category of I, which gives as the advice from the Sentencing Commission that the sentence in this case not be less than 188 months nor more than 235 months; the period of supervised release is recommended to be five years; a fine of not less than [$20,000] nor more than $12 million.
> . . .
> Arithmetically, are the guidelines properly calculated, [counsel]?
> [AUSA]: They are from the government's perspective, yes.
> THE COURT: Arithmetically, and saving your rights, [defense counsel], are they properly calculated?
> [DEFENSE COUNSEL]: Well, yes with one exception [not

relevant here].

Id. at 23-24.

In sum, this Court did not add in a two-level enhancement for gun possession by Carrasquillo. He can hardly complain about that, and I do not understand him to be complaining. In actuality though, stripped of colorful adjectives and slanted conclusions, Carrasquillo's habeas memorandum, see Pet'r's Mem., was actually argued to this Court by defense counsel at sentencing. Knowing both counsel as I do, such argument resonated with the Court and won the day for Carrasquillo on this point.[3]

---

[3] It cannot be repeated too often that the Court's conclusion here, as well as its conclusion not to award the safety valve discount, is not a "finding," much less does it reflect a calculus of "fair preponderance" or "beyond a reasonable doubt." Contra U.S.S.G. § 6A1.3, Commentary. These are concepts that depend on genuine evidence. A sentencing hearing is simply not an evidentiary hearing. It is sophistry to pretend otherwise. See Jones, 762 F. Supp. 2d at 282 n.11; United States v. Tejeda, 550 F. Supp. 2d 204, 207 (D. Mass. 2008); United States v. Birkett, 501 F. Supp. 2d 269, 272 (D. Mass. 2007); United States v. Griffin, 494 F. Supp. 2d 1, 13 (D. Mass. 2007), vacated on other grounds, 524 F.3d 71 (1st Cir. 2008); United States v. Green, 346 F. Supp. 2d 259, 318 (D. Mass. 2004), vacated in part on other grounds, United States v. Yeje-Cabrera, 430 F.3d 1 (1st Cir. 2005).
　　This is the most perniciously enduring effect of what we now know was, in its oxymoronic mandatory guise, an unconstitutional sentencing system. The farther the judicial system drifts from actual trial of disputed issues before it, the more likely it is that reality will be subordinated to institutional self interest. See DeLaventura v. Columbia Acorn Trust, 417 F. Supp. 2d 147, 153-55 n.7 (D. Mass. 2006) (criticizing overemphasis on settlement in MDL practice). An entire generation of federal district judges has today been brought up under a sentencing system that makes crucial determinations about liberty upon a

## II. The Safety Valve

As near as I can figure it out, Carrasquillo is arguing that had defense counsel been effective, he could have made a straightforward and honest proffer (with no mention of gun possession), and thus garnered a two-level safety valve reduction. Although it is unclear to me what defense counsel ought have done, there was no prejudice here.

Wholly aside from the legal issue whether the safety valve even applies by its own terms, Carrasquillo's sentence would be the same. Had the Court granted the two-level downward safety valve adjustment, Carrasquillo's guideline sentencing range would have been 151 to 188 months. See Sentencing Table, United States Sentencing Guidelines Manual § 5.A (2007). As noted

---

mish-mash of non-evidentiary materials that parade under evidentiary terms which ought be reserved for actual trials. A strong argument can be made that our current unease with the overuse of summary judgment in the district courts, see Arthur R. Miller, The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Cliches Eroding Our Day in Court and Jury Trial Commitments?, 78 N.Y.U. L. Rev. 982 (2003); Diane P. Wood, Summary Judgment and the Law of Unintended Consequences, 36 Okla. City U. L. Rev. 231 (2011); see also United States v. Commonwealth of Massachusetts, 781 F. Supp. 2d 1 (D. Mass. 2011); but see Randall R. Rader, C.J., Fed. Cir., Remarks at the Eastern District of Texas Judicial Conference: The State of Patent Litigation 12-13 (Sept. 27, 2011) (advocating "aggressive" use of summary judgment in patent cases and seeming to be fearful of prompt jury trials), available at https://www.docketnavigator.com/entry/img/The-State-of-Patent-Litigation-w-Ediscovery-Model-Order.pdf, stems directly from a sentencing system that strongly encourages, if it does not actually require, district judges to sentence offenders on second or third order hearsay and the arguments of counsel. How did we come to settle for this?

above, however, this Court counted the gun possession toward the constitutionally permissible maximum sentence of 293 months. See Sentencing Tr. 10. In light of the need for proportionality discussed above, and the fact that the guidelines are only advisory, the statutory command that the sentence "reflect the seriousness of the offense, . . . promote respect for the law, and . . . provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), would have led this Court to depart upwards and impose the same eighteen year (216 months) sentence.

Moreover, whatever Carrasquillo may think of his proffer, it is clear that the AUSA was not convinced of its truthfulness and would not have supported a safety valve reduction regardless of the persuasive and effective advocacy of defense counsel. This Court is well aware of its power (and responsibility) to apply a safety valve reduction even over the objection of the government. The simple fact is, however, that I have never done it.[4] Again, my reasoning is straightforward. The whole idea of

---

[4] I make this statement with a high degree of confidence because

> Donald Womack, the superb court reporter assigned to this session, maintains a fully searchable, publicly available database of all this Court's post-Booker sentences and the statement of reasons therefor. This database has the great advantage of isolating each individual sentence and informing this Court's discretion (and I check it before each sentencing hearing).

Jones, 762 F. Supp. 2d at 280. I've checked it here.

the safety valve is that there be a "truthful" proffer. "Truthiness" won't do.  Absent a full fact-finding hearing on the matter, this Court is not in a position to second guess government counsel who most frequently are deep into an investigation that involves far more than the charges before the Court.  While I can conceive of a situation where the Court might grant a safety valve reduction over the objection of the government, this case does not present that situation, and I simply cannot conceive of what competent defense counsel might have done on this record to change either the government's (or this Court's) position on the matter.  Carrasquillo suffered no prejudice at the hands of his defense counsel here.

This Court treats every habeas petition with utmost seriousness in light of the liberty interests involved.  "Sua sponte dismissed with a margin notation" is reserved for petitions that are frivolous either legally or in light of the factual record known to the Court.  Carrasquillo's petition is frivolous.

Respectfully submitted,

/s/ William G. Young  
WILLIAM G. YOUNG  
DISTRICT JUDGE